IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

**RHONDA L. FUQUA and SHAUN S. SMITH**                                                                   **PLAINTIFFS**

**v.**                                                                                               **NO. 2:09cv188-SA-DAS**

**WAL-MART STORES EAST, L.P.**                                                                            **DEFENDANT**

## MEMORANDUM OPINION

Before the Court is Defendant Wal-Mart Stores East, L.P.'s Motion for Summary Judgment [44] as to Plaintiff Shaun Smith's claims for gender discrimination and retaliation under Title VII. For the following reasons, the motion is granted.

## BACKGROUND FACTS

Shaun Smith was employed as an assistant manager in the Hernando, Mississippi, Wal-Mart store. In July of 2007, Smith, along with fellow female employees JoAnn Stebbins and Rhonda Fuqua, approached Todd Janksi, the Human Resource Manager for the region, and complained they were unhappy with their scheduling and hours. They also complained that another assistant manager, Vontice Smith (no relation to Shaun Smith, and hereinafter referred to as Vontice), was not performing his job correctly. On July 31, 2007, Janski conducted one-on-one "open door" meetings with all the assistant managers from the Hernando store, including Smith and Fuqua.

Shortly thereafter, a multi-store investigation revealed that Fuqua, Smith, and Vontice had taken cash advances and failed to repay them.[1] Vontice had a $400 outstanding cash advance from

---

[1] Wal-Mart alleges that the advances were obtained improperly. Wal-Mart's policy is that store manager approval is required for all cash advances for salaried managers. Fuqua, Smith, and Vontice, who were assistant managers, each approved loans for each other. However, Plaintiffs testified that the practice at the Hernando Wal-Mart was that any manager could sign for another manager. Janski testified that the only problem with the advances was that they had

1

May 11, 2006; Fuqua had a $150 outstanding cash advance from February 5, 2007;[2] and Smith had taken approximately $1200 in cash advances between June 2006 and August 2007. As discipline, on September 19, 2007, each assistant manager was given a Decision Making Day (the highest level of discipline before an employee is terminated) and a demotion to hourly employee / associate status.[3] As a condition of continued employment, each former assistant manager was given thirty days to repay the money and locate an hourly position in another store. Each employee also acknowledged a "Coaching for Improvement" form which stated that failure to repay the money or locate a new position within thirty days would result in termination. Fuqua and Vontice repaid the money owed, but Smith made only a $200 partial repayment. In her deposition, Smith testified that, at the beginning of the investigation, Brad Sullivan, the regional manager for North Mississippi, told her orally that she would have six months to repay the money. However, Smith also admits that she later signed documentation acknowledging that she had until October 18, 2007, to repay the funds.

Because Wal-Mart's internal job system did not allow salaried managers to apply systemically for hourly positions, applications had to be made through an "exceptions process." In an affidavit, Janski described the process as follows: Each associate would notify Janski what

---

not been repaid, but also acknowledged that Wal-Mart's policy required approval from the store manager. It is undisputed, however, that Fuqua, Smith, and Vontice each received cash advances and failed to pay them back until after the investigation.

[2]The investigation also revealed an outstanding advance of $150 to Fuqua from August 25, 2006 which was approved by Vontice; however, Fuqua claims, and Wal-Mart apparently does not dispute, that someone forged her name on the advance.

[3]Vontice already had a Decision Making Day coaching in his file from earlier in the year. Janksi testified that obtaining two Decision Making Days in one year would normally result in an automatic termination. However, Janksi believed that the first Decision Making Day was issued by mistake and had it removed.

positions he or she was interested in. Janski would then complete a "transition worksheet" for the desired position which computed the hourly rate of pay for the position sought. After approval by the Compensation Department, this rate would be communicated to the associate. If the associate, after learning the rate of pay, wished to proceed with applying for the position, Janksi would obtain an "exception request" from the store manager of the store where the position sought was located. Janski would approve the exception request, and it would then be sent to another regional human resources manager for approval. If approved, the request was then sent to the Home Office's Career Preference Team for final approval. Upon the Career Preference Team's final approval, the associate could then compete for the position. Janski went on vacation from September 21, 2007 through September 25, 2007, but remained available by e-mail or telephone. In her deposition, Smith acknowledged that Janksi assisted her in applying for the only position she was interested in.

On September 26, 2007, Fuqua and Smith filed charges of discrimination with the EEOC alleging sex discrimination and retaliation. Smith was terminated on October 18, 2007 after failing to repay the money or obtain an hourly position at another store. Fuqua was also terminated after failing to obtain a position at another store.

Vontice obtained a position as the photo lab manager at the Southaven, Mississippi, Wal-Mart store. He testified in his deposition that rather than having to apply or interview for a new position, Wal-Mart management offered him a choice between two positions after he had paid back the money. He also testified that he was guaranteed he could have his old position back if he "sucked it up for a year" in Southaven. Smith alleges that she was not made a similar offer. Fuqua and Smith commenced this suit against Wal-Mart on October 20, 2009.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." Agnew v. Washington Mut. Fin. Group, LLC, 244 F. Supp. 2d 672, 675 (N.D. Miss. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." Oliver v. Scott, 276 F.3d 736, 744 (5th Cir. 2002).

The Court is not to weigh the evidence or engage in credibility determinations. Anderson, 477 U.S. at 249, 106 S. Ct. 2505; Deville v. Marcantel, 567 F.3d 156, 164 (5th Cir. 2009). "[T]he court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Deville, 567 F.3d at 164.

# **DISCUSSION**

*Sex Discrimination*

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff alleges that her termination was improperly based on sex discrimination. Plaintiff seeks to prove her case circumstantially based on the standards set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Under the McDonnell Douglas standard, Plaintiff must first establish a prima facie case of discrimination by establishing that she was (1) a member of a protected group; (2) qualified for the position she held; (3) that she suffered an adverse employment decision; and (4) either replaced by someone outside the protected group or treated less favorably than employees not in the protected group. Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 513 (5th Cir. 2001). Proof of disparate treatment can establish the fourth element of the plaintiff's prima facie case. Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 260 (5th Cir. 2009); see also Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005).

Once a plaintiff has made her prima facie case, the defendant then has the burden of producing a legitimate, nondiscriminatory motive for the adverse employment action. Parker v. State of La. Dep't of Educ. Special Sch. Dist., 323 F. App'x 321, 327 (5th Cir. 2009). The defendant's burden at this stage is merely one of production–not persuasion. Id.

If the defendant can articulate a reason that, if believed, would support a finding that the

action was nondiscriminatory, then the inference of discrimination created by the plaintiff's prima facie case disappears, and the fact finder must decide the ultimate question of whether the plaintiff has proven intentional discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511-12, 113 S.Ct. 2742, 125 L. Ed. 2d 407 (1993). Plaintiff must rebut the defendant's legitimate, nondiscriminatory reason for an adverse employment action by presenting evidence that (1) the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative), or (2) the defendant's reason, though true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative). Davis v. Farmers Ins. Exch., 372 F. App'x 517, 519 (5th Cir. 2010); Bryant, 413 F.3d at 476.[4]

**Prima Facie Case**

The parties do not dispute that Plaintiff has satisfied the first three elements of her prima facie case. However, Defendant disputes whether Smith can put forth any evidence that she was treated less favorably than a similarly situated male employee. "To raise an inference of discrimination, the plaintiff may compare his treatment to that of nearly identical, similarly situated individuals." Bryant, 413 F.3d at 478. This is an exacting standard. As the Fifth Circuit has explained:

> The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.

---

[4]Defendant asserts, without supporting authority, that because Smith "failed to specifically plead a mixed motives claim in her Complaint. . . . this Court must disregard any mixed motive claim altogether." However, the mixed motives theory of proof is "best viewed as a defense for the employer." Smith v. Xerox Corp., 602 F.3d 320, 333 (5th Cir. 2010). The Court finds Smith appropriately raised mixed motives in her response to the pending motion. See Brown v. Jackson Mun. Airport Auth., 2010 WL 4457775, at *3 (S.D. Miss. Nov. 1, 2010).

6

> And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the "difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer," the employees are not similarly situated for the purposes of an employment discrimination analysis.

Lee, 574 F.3d at 260 (citations omitted).

Smith argues that she "was treated less favorably than a similarly situated male assistant manager, [Vontice], under nearly identical circumstances." Smith relies on Vontice's testimony that he was offered a choice between two positions without having to interview, as well as the fact that Vontice already had one Decision Making Day in his file at the time the discipline from the cash advance investigation was issued. However, as Defendant points out, it is undisputed that Smith failed to repay her advances, while Vontice repaid his. This fact alone establishes that the purportedly disparate employment actions did not occur under "nearly identical circumstances," and consequently, any alleged disparate treatment between Smith and Vontice does not allow an inference of discrimination. Even crediting Smith's deposition testimony that Brad Sullivan orally gave her six months to repay the money, the undisputed fact remains that Vontice repaid the money while Smith did not. Smith's evidence fails to show disparate treatment of a similarly situated male employee under nearly identical circumstances; consequently, Smith has failed to establish a prima facie case of sex discrimination. Summary judgment is appropriate as to this count.

Even assuming arguendo that Smith could establish a prima facie case of sex discrimination, Smith has offered no competent summary judgment evidence that Defendant's articulated reason for her termination was pretextual or that its decision was motivated by discriminatory animus. Smith does not dispute that she failed to obtain a new position or repay the money. In an attempt to show

7

pretext or a discriminatory motive, Smith again relies on the purportedly disparate treatment of herself and Vontice. Disparate treatment of similarly situated employees is one way to demonstrate unlawful discrimination. Bryant, 413 F.3d at 478 (citing Smith v. Wal-Mart Stores, 891 F.2d 1177, 1180 (5th Cir. 1990)). However, when attempting to prove discrimination by this method, under either the pretext or the mixed motives alternative, the plaintiff must again compare her treatment to that of a nearly identical, similarly situated employee. Id. (citations omitted); Taylor v. Peerless Indus. Inc., 322 F. App'x 355, 365-66 (5th Cir. 2009).[5] As discussed above, the purportedly disparate treatment of Smith and Vontice did not take place under nearly identical circumstances. Defendant's Motion for Summary Judgment is granted as to this claim.

*Retaliation*

Smith also alleges that her discipline and subsequent termination constituted unlawful retaliation in violation of Title VII. She further alleges that she was written up on August 3, 2007, allegedly for having an unorganized work space, in retaliation for her complaints to Janski. A plaintiff establishes a prima facie case of retaliation by showing that: (1) she engaged in an activity protected by Title VII; (2) she was subjected to an adverse employment action; (3) a causal link exists between the protected activity and the adverse employment action. See Stewart v. Mississippi Transp. Comm'n, 586 F.3d 321, 331 (5th Cir. 2009). If the plaintiff makes out a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for

---

[5]In a recent unpublished opinion, the Fifth Circuit held that the "nearly identical circumstances" test was appropriate when analyzing whether disparate treatment of similarly situated employees could establish discriminatory motive under the mixed-motives framework. Taylor, 322 F. App'x at 365-66 (5th Cir. 2009). Therefore, it appears that the test for determining whether purportedly disparate treatment permits a reasonable inference of discrimination under either the pretext or mixed-motives alternative is the same. See id. at 366 n.6 ("the rationale for the 'nearly identical standard' is equally applicable in both contexts").

the employment action. Aryain v. Wal-Mart Stores Tex. LP, 534 F.3d 473, 484 (5th Cir. 2008). The Fifth Circuit has recently made it clear that the mixed motives framework applies to Title VII retaliation cases based on circumstantial evidence. Smith v. Xerox Corp., 602 F.3d 320, 331 (5th Cir. 2010). Therefore, to survive summary judgment, plaintiff must offer evidence that (1) the defendant's reason is not true, but is instead a pretext for retaliation (pretext alternative), or (2) the defendant's reason, though true, is only one of the reasons for its conduct, and another motivating factor is retaliation for the plaintiff engaging in protected activity (mixed-motives alternative). See Davis, 372 F. App'x at 519; Smith, 602 F.3d at 330-33.

**Prima Facie Case**

Smith alleges that she engaged in two instances of protected conduct: her complaints to Janski on or around July 31, 2007, and her September 26, 2007 EEOC complaint. Defendant concedes that Smith can arguably establish a prima facie case of retaliation because she was terminated twenty-two days after filing an EEOC charge. However, Defendant disputes whether Smith's complaints to Janksi constituted protected activity. Under Title VII, an employee has engaged in protected activity if she has "opposed any practice made an unlawful employment practice under 42 U.S.C. § 2000e-3(a)." Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 348 (5th Cir. 2007). To satisfy this opposition requirement, plaintiff need only show that she had a "reasonable belief that the employer was engaged in unlawful employment practices." Id. (citing Byers v. Dallas Morning News, 209 F.3d 419, 428 (5th Cir. 2000)).

The deposition testimony offered by Smith shows that during her meetings with Janksi, she complained about Vontice's job performance, her belief that management was failing to properly reprimand Vontice, and staffing issues. Although "[m]agic words are not required . . . protected

9

opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." Brown v. United Parcel Serv., Inc., 2010 WL 5348552, at *3 (5th Cir. Dec. 28, 2010) (citing cases). Even viewing this testimony in the light most favorable to the plaintiff, Smith did not complain about gender discrimination and none of the conduct complained of could reasonably be viewed as an unlawful employment practice. Therefore, Smith's discussions with Janski on the sales floor and during the open door meeting did not constitute "protected activity" under Title VII. The Court therefore need not consider whether Smith's August 3, 2007 write up or the discipline resulting from the cash advance investigation constituted unlawful retaliation. However, as Defendant concedes, Smith has nonetheless arguably established a prima facie case because she was terminated twenty-two days after filing an EEOC complaint. Therefore, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for Plaintiffs termination.

**Legitimate, Nondiscriminatory Reason**

Defendant asserts that Smith was terminated because she failed to repay the cash advances or obtain an hourly position at another store within 30 days as required by the "D-Day" coaching. Defendant has satisfied its burden of production.

**Pretext and Mixed Motive**

Once an employer has produced a legitimate, nondiscriminatory reason for an adverse employment action, a plaintiff must offer some other evidence beyond mere temporal proximity between the protected activity and the adverse employment action that the employer's stated reason for termination was a pretext for retaliation, or that retaliation motivated the action. Swanson, 110 F.3d at 1188; Raborn v. Inpatient Mgmt. Partners, Inc., 352 F. App'x 881, 887 (5th Cir. 2009)

("While the temporal proximity between a protected action and an adverse employment decision may be sufficient to prove a prima facie case of retaliation, temporal proximity alone is insufficient to rebut an employer's legitimate, non-retaliatory reason."). Smith argues that she has presented sufficient evidence to survive summary judgment under either the pretext or the mixed-motives alternative. Here, Smith was terminated twenty-two days after filing a charge of discrimination with the EEOC. Smith also relies on the same evidence raised in her sex discrimination claim – namely, the purported disparate treatment of herself and Vontice – as evidence that Defendant's reason for her termination was pretextual, or alternatively, that Defendant possessed a retaliatory motive in discharging her.

"Disparate treatment is indeed one way of demonstrating unlawful retaliation, but the conduct that led to the plaintiff's termination must be 'nearly identical to that engaged in by an employee not within [the] protected class whom the company retained.'" Harris v. Miss. Transp. Comm'n, 329 F. App'x 550, 556 (5th Cir. 2009) (quoting Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 220 (5th Cir. 2001). As discussed above, Smith's evidence fails to demonstrate that she was treated less favorably than a similarly situated male manager under nearly identical circumstances. Smith has failed to produce any competent summary judgment evidence that Defendant's stated reason for her termination was a pretext for unlawful retaliation or that retaliation was a motivating factor in her termination. Summary judgment is granted as to this count.

## **CONCLUSION**

Defendant's Motion for Summary Judgment [44] is GRANTED and Plaintiff Shaun Smith's claims are dismissed.

SO ORDERED on this, the 7th day of June, 2011

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**